IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN D., | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-18-0882 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On March 27, 2018, Stephen D. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13, 21), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED.

### PROCEDURAL HISTORY

On April 7, 2014, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on June 23, 2012. His claim was denied initially and upon reconsideration on February 17, 2015 and March 9, 2015, respectively. Subsequently, on May 5, 2015, Plaintiff filed a written

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

request for a hearing and, on January 4, 2017, an Administrative Law Judge ("ALJ") presided over a hearing. On June 21, 2017, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], since April 7, 2014, the date the application was filed." ECF No. 10 at 70. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on February 6, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On March 27, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. On September 12, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on January 10, 2019. Plaintiff did not respond to Defendant's motion and the time to do so has since passed.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld,

---

[2] On January 31, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

3

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634– 35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective

medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since April 7, 2014, the application

date. ECF No. 10 at 57. At step two, the ALJ found that Plaintiff had the severe impairments of "major depressive disorder, left rotator cuff tear status-post surgery, and sleep apnea." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 59. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 416.967(c) except he can perform only simple, routine, and repetitive tasks, but not at a production rate pace. He is further limited to simple work-related decisions. Time off-task can be accommodated by normal breaks. He can have occasional interaction with supervisors, co-workers, and the public. He can tolerate few changes in the routine work setting.

*Id.* at 61. The ALJ then determined that Plaintiff had past relevant work as a delivery truck driver, but that he is unable to perform such work. *Id.* at 68. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 69. Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], since April 7, 2014, the date the application was filed." *Id.* at 70.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ improperly determined that Plaintiff's carcinoid syndrome was not a severe impairment; (2) that substantial evidence did not support the ALJ's RFC determination for his physical impairments; and (3) that substantial evidence did not support the ALJ's RFC determination for his mental impairments. Each of Plaintiff's arguments lack merit and are addressed below.

### A. The ALJ Properly Evaluated Plaintiff's Carcinoid Syndrome As A Non-Severe Impairment.

Plaintiff first argues that his carcinoid syndrome qualifies as a severe impairment and that the ALJ erred in failing to adjudicate the impairment in her decision. ECF No. 13-1 at 6. The Court disagrees.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "The claimant bears the burden of proving that his impairment is severe." *Conard v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-2290, 2013 WL 1664370, at *2 (D.Md. Apr. 16, 2013) (citing *Johnson v. Astrue*, No. PWG-10-3139, 2012 WL 203397, at *2 (D.Md. Jan. 23, 2012)).

In her step two analysis, the ALJ found the following severe impairments: "major depressive disorder, left rotator cuff tear status-post surgery, and sleep apnea." ECF No. 10 at 57. The ALJ also thoroughly explained why Plaintiff's carcinoid syndrome was not found to be a severe impairment:

> In addition, the undersigned finds that [Plaintiff] has the nonsevere [sic] impairment of carcinoid tumor. The record shows that in early April 2014, he sought treatment from Dr. Bellamkonda for symptoms including abdominal pain and diarrhea. On examination, he was noted to have tenderness in the epigastric area; however, he had no rebound, distension, abnormal bowel sounds, or guarding. Lifestyle changes and a special diet were recommended, and he was referred to a gastroenterologist. Shortly thereafter, a rectal neuroendocrine carcinoid tumor was confirmed on biopsy, and [Plaintiff] underwent a polypectomy. Subsequently, he had repeatedly normal abdominal exams. On May 20, 2014, he denied any symptoms of rectal cancer other than chronic bowel movement changes. He sought treatment with Ralph V. Boccia, M.D., a gastroenterologist. Although he testified that the tumor has recurred, the record shows that on May 4, 2014, residual polyp was

> ruled out on sigmoidoscopy. Octreoscan in August 2014 was unremarkable. Metastasis was ruled out on CT scan in April 2015. Abnormal lab results were repeatedly attributed to noncompliance with test preparation directions. [Plaintiff] sought treatment with Daniel A. Laheru, M.D., an oncologist, in or about January 2015. Subsequent laboratory testing was within normal limits. In September 2014, [Plaintiff] reported only mild nausea. In early February 2015, he denied any nausea or vomiting. He repeatedly denied any abdominal pain or current diarrhea. [Plaintiff] admitted during the hearing that he declined the offered medication Dr. Laheru recommended for diarrhea and flushing. There is no objective evidence of significant diarrhea such as dehydration, malnutrition, or weight loss. On examination in late March 2016, he was noted to be well nourished. In August 2016, he denied any hot flashes or stomach problems. Subsequently, he reported only minor flushing and intermittent diarrhea.

*Id.* at 58 (internal record citations omitted).

The ALJ based her determination on the record evidence, including Plaintiff's medical records. *Id.* Specifically, the ALJ noted that Plaintiff had "repeatedly normal abdominal exams" in 2014, 2015, and 2016 after being diagnosed with the carcinoid tumor. *Id.* The ALJ also observed that "residual polyp was ruled out on sigmoidoscopy," an "[o]ctreoscan in August 2014 was unremarkable," and "[m]etastasis was ruled out on CT scan in April 2015." *Id.* Contrary to Plaintiff's allegation that the ALJ "play[ed] doctor" and made medical findings without medical support, ECF No. 13-1 at 6, the ALJ almost exclusively relied upon medical evidence to support her finding that Plaintiff's carcinoid syndrome was not severe, and this evidence was more than substantial to support the ALJ's decision. "[T]he Court does not question factual findings if they were based on proper legal standards." *Kenney v. Astrue*, No. CBD-10-1506, 2011 WL 5025014, at *3 (D.Md. Oct. 20, 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

Although Plaintiff contends that his carcinoid syndrome is a severe impairment, he has cited no medical evidence to support his theory and has not explained how the impairment has affected his ability to perform basic work activities as required by 20 C.F.R. § 416.920(c).

9

Accordingly, substantial evidence supports the ALJ's decision that Plaintiff's carcinoid syndrome is not a severe impairment.

### B. Substantial Evidence Supports The ALJ's RFC Determination.

Plaintiff's two remaining allegations relate to the ALJ's RFC determination. Essentially, Plaintiff argues that the ALJ's physical and mental RFC findings are not supported by substantial evidence. ECF No. 13-1 at 7–8. The Court disagrees with both arguments.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and

assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio*, 780 F.3d at 636 (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

  1. The ALJ Properly Assessed Plaintiff's Physical RFC.

Plaintiff contends that the ALJ's physical RFC findings lack medical support. ECF No. 13-1 at 7. Specifically, Plaintiff takes issue with the ALJ's finding that Plaintiff can perform medium work in light of the opinion of Dr. Clausen, the consultative examining state agency medical expert that the ALJ gave great weight to. *Id.* Dr. Clausen opined that Plaintiff had the capacity to walk and/or stand for "[a]t least four hours," ECF No. 10 at 370, which Plaintiff contends does not support a finding of medium work, ECF No. 13-1 at 7. Plaintiff also argues that Dr. Clausen's examination did not take into account Plaintiff's shoulder surgery, which "had the effect of limiting [Plaintiff] to light work," and disagrees with the ALJ's analysis of Plaintiff's testimony regarding his daily activity. *Id.*

At step four, the ALJ articulated her rationale that Plaintiff could perform medium work in a detailed narrative:

> As for [Plaintiff]'s daily activities, for example, he has no problem with personal care. He prepares his own meals[,] including protein smoothies. Although he testified that he does not drive, the record shows that he initially stated that he does drive. In addition, he repeatedly stated that he travels using public transportation. He also shops in stores for groceries and personal hygiene supplies. Although he testified that he does not do much of anything during the day, the record shows that he is able to do household chores and yard work. In late July 2016[,] he described himself as an "avid runner" and stated that he had "continued running even after shoulder surgery performed by Dr. Schluntz about a month ago." He did admit that he does his own laundry, prepares his own meals, and travels using public transportation.

11

As for the location, duration, frequency, and intensity of [Plaintiff]'s symptoms, for example, [Plaintiff] testified to significant weight fluctuations. However, the record shows that his weight has not changed significantly. Although he initially testified that he cannot lift anything with his left hand, he later testified that he can lift a gallon of milk with his left hand. Although he initially testified that he is ambidextrous, he later denied being ambidextrous when it was suggested that he could use his right upper extremity instead of his left upper extremity [t]o perform one-handed activities. The record shows that on July 28, 2016, about a month after his shoulder surgery, the physical therapist noted that he had good range of motion and activity tolerance. [Plaintiff] repeatedly stated that his shoulder felt good after the surgery. On examination, he was repeatedly noted to appear well. Although [Plaintiff] testified that he spends most of the day in bed resting, the record shows that in November 2015, he stated that he spends his days playing instruments with his friends and working out. In December 2015, he stated he was exercising regularly.

The record further shows that during the face-to-face interviews in support of the instant application, the interviewers noted no difficulties sitting, standing, walking, using his hands, or writing. Although he testified that he can only walk about a block at a time without stopping even on a good day due to chronic fatigue/exhaustion, the record shows that initially he stated that when he is rested, "walking distance is not an issue." On examination in early February 2015, he was noted to have no limitation in ambulation. Initially he stated that he tries to go outside daily and travels by walking. On examination, he was repeatedly noted to be in no distress at all. In early April 2014[, Plaintiff] stated that he tries to "manage his aches and pains by exercising regularly." He repeatedly stated that he exercises regularly. On examination, he was repeatedly noted to have no musculoskeletal tenderness. In May 2014, he repeatedly denied any musculoskeletal symptoms. On examination, he had normal strength, sensation, range of motion, and musculature, without any joint deformity or abnormalities. He does not use any assistive devices to ambulate.

In addition, the record shows that on examination in late January 2015, [Plaintiff] was noted to have no problems sitting, ambulating, removing his shoes, or making a fist. He had full grip strength. Tandem walk, walking on heels and toes, hopping, bending, and squatting were all normal, and straight-leg raising test was negative. He had full strength in all extremities, with normal range of motion in all joints. His pulse was hyperdynamic but otherwise normal. Although he testified that he is in constant pain, he repeatedly denied

> any pain. He stated that he was generally well except for the recent tumor diagnosis. He repeatedly denied any arthralgias/myalgias. On examination, he was repeatedly noted to have full strength and ambulated into the room without difficulty. On examination in October 2015, he was noted to have normal muscle tone, gait, and station, with good strength. He described his medical problems as "minor." He further stated he exercises daily and repeatedly stated that daily exercise was ingrained in his identity. In December 2015, echocardiogram confirmed an ejection fraction of 65%. In January 2016, [Plaintiff] stated that he felt well overall. He reported running 3-4 miles periodically and stated that his energy level was better. On examination in late March 2016, he was noted to have a muscular build, with full range of movement, no obvious muscle weakness, and appropriate gait and balance. On examination in late July 2016, he had no instability in the left shoulder, only a trace of decreased strength, and only mild pain and impingement, with nearly full range of motion. In mid-August 2016, he denied any joint pains. Although [Plaintiff] testified to significant shortness of breath, there is no objective evidence of shortness of breath or evidence that he complained to treating or examining sources of shortness of breath. In July 2016, he denied any difficulty breathing.

ECF No. 10 at 63–64 (internal record citations omitted). When addressing the type, dosage, effectiveness, and side effects of Plaintiff's medication, the ALJ noted that Plaintiff "testified to longstanding severe pain in the left shoulder, [but] the record shows he repeatedly stated he was taking no medication at all." *Id.* at 66. Finally, when addressing Plaintiff's treatment, the ALJ observed that "although [Plaintiff] testified that he has regular doctors' appointments, the record shows that in early April 2014 he stated that he 'almost never goes to doctors'" and that he had only sought treatment at that time "because he had been advised to do so by the [SSA] in connection with his pending SSI application." *Id.* With regard to his sleep apnea treatment, treatment notes showed that "[Plaintiff]'s sleep improved once he was properly treated for obstructive sleep apnea." *Id.* at 67.

Here, the ALJ's findings are clearly supported by substantial evidence. The ALJ extensively reviewed and considered the totality of the evidence, including Plaintiff's testimony

13

about his daily activity, the objective medical evidence, and medical opinion evidence to support her findings in accordance with SSR 96-8p. Although the ALJ assigned great weight to Dr. Clausen's opinion that Plaintiff had the capacity to walk and/or stand for at least four hours, the ALJ was not required to adopt that limitation into her RFC. *See Schlossnagle v. Colvin*, No. TMD 15-935, 2016 WL 4077672, at *8 (D.Md. Aug. 1, 2016) ("[T]his Court previously has stated that, because great weight is not controlling weight, 'the ALJ is not required to adopt every limitation set forth in a medical opinion, simply because she assigns it great weight.'" (quoting *Elsey v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2457, 2015 WL 2258540, at *3 (D.Md. May 12, 2015))). As to Plaintiff's argument regarding his shoulder surgery, the ALJ clearly considered the impairment and cited substantial evidence indicating that Plaintiff "had no instability in the left shoulder, only a trace of decreased strength, and only mild pain and impingement, with nearly full range of motion." ECF No. 10 at 64. Finally, Plaintiff's argument as to the ALJ's analysis of his self-reported daily activity is simply meritless. As noted, SSR 96-8p requires the ALJ to consider nonmedical evidence, including a claimant's reports of daily activity. SSR 96-8p, 1996 WL 374184, at *5. Thus, the ALJ did not err in considering Plaintiff's reports of frequent exercise to support the conclusion that Plaintiff has the physical capability to perform medium work. Accordingly, the Court finds that the ALJ's physical RFC was supported by substantial evidence.

2. The ALJ Properly Assessed Plaintiff's Mental RFC.

Plaintiff's final argument alleges that the ALJ's mental RFC findings lack medical support because the ALJ relied upon the opinion of Dr. Cascella, the consultative examining State agency psychiatric expert, which Plaintiff contends was not a medical opinion. ECF No. 13-1 at 7–8. Additionally, Plaintiff alleges that the ALJ could not properly adjudicate Plaintiff's mental RFC

because the regulations regarding medical criteria used to evaluate mental disorders were revised and became effective fourteen days after Plaintiff's hearing. *Id.* at 8.

At step four, the ALJ found that Plaintiff had the mental RFC to:

> perform only simple, routine, and repetitive tasks, but not at a production rate pace. He is further limited to simple work-related decisions. Time off-task can be accommodated by normal breaks. He can have occasional interaction with supervisors, co-workers, and the public. He can tolerate few changes in the routine work setting.

ECF No. 10 at 61. The ALJ then provided the following narrative related to Plaintiff's mental RFC:

> As for his mental impairment, the record shows that on examination, [Plaintiff] was repeatedly noted to be alert and fully oriented. On examination, he was repeatedly noted to have a normal mood, affect, and behavior. In May 2014, he repeatedly denied any mental symptoms. On examination, he was noted to have normal mentation without unusual anxiety or evidence of depression. During the consultative State agency psychiatric evaluation in late January 2015, he denied feelings of worthlessness and hopelessness as well as hallucinations. On examination, his speech was normal, and he had no formal thought disorder. On examination in early February 2015, he was noted to have normal insight and judgment and appropriate mood and affect. On examination in April 2016, he was noted to be calm and collected. He repeatedly denied suicidal and homicidal ideation and has never attempted suicide. In October 2015, he denied any crying. Although he testified that his depression had worsened steadily since that time, the record shows that in January 2016 he stated that overall[,] he was having some times of happiness. On examination in late March 2016, he was noted to have a positive general affect, without obvious symptoms of anxiety or depression. In June 2016, he stated he felt tired only sometimes. In late July 2016[,] he reported moderate exercise. In mid-August 2016, he denied significant fatigue/tiredness, mood changes, or anxiety. Although he testified to appetite disturbance with significant weight loss, the record shows that in October 2015 he related a good appetite. On examination, his affect was noted to be in the good range.
>
> As for his ability to understand, remember, and apply information, the record shows that he needs no special reminders to take care of

personal needs and grooming or taking medicine. During the face-to-face interviews in support of the instant application, the interviewers noted no difficulties understanding or answering. He is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. His ability to handle money has not changed since the conditions began. He made no mistakes on the serial 7's test at the consultative State agency psychiatric evaluation in January 2015. He understands and follows simple instructions independently. In August 2016, he denied any memory difficulty. In October 2015[,] he stated he enjoys learning about nutrition. On examination, he was noted to have normal thought processes, with grossly intact cognition, good fund of knowledge, intact memory, and good insight and judgment.

As for his ability to concentrate, persist, and maintain pace, the record shows that he sometimes finishes what he starts and usually has no difficulty following written instructions. His mental status exam was repeatedly noted to be within normal limits. During the face-to-face interviews in support of the instant application, the interviewers noted no difficulties concentrating. In December 2015, he stated he was committed to exercising regularly. On examination, he was repeatedly noted to have good attention and concentration. He testified that he spends an hour at the grocery store at least once every two weeks and sometimes once a week. He further testified that it takes him 2-3 hours to do his laundry.

As for his social functioning, [Plaintiff] testified he is withdrawn and not interested in socializing. However, the record shows that [Plaintiff] enjoys talking with others daily. He has no problems getting along with others. He gets rides from friends and has lived with friends at times since the application date. On examination, he was noted to be polite at the consultative State agency physical exam in January 2015. On examination, he was repeatedly noted to be pleasant, with good eye contact. In October 2015, he reported having many friends and great relationships with his mother and siblings. In November 2015[,] he stated that he had been social lately, playing instruments with friends. On examination, he was repeatedly noted to be cooperative. He testified that he lives with a friend, who takes him to the grocery store every two weeks.

As for [Plaintiff]'s ability to adapt and maintain himself, the record shows that he can usually adjust to changes in routine.

As for the type, dosage, effectiveness, and side effects of [Plaintiff]'s medication, for example . . . . [h]e testified that he rarely took any medication prior to starting Wellbutrin a few months

16

> before the hearing "except for an occasional aspirin for a really bad headache." Although [Plaintiff] admitted that antidepressants were recommended in late 2015, he declined to take them until about two months prior to the hearing because he did not feel he needed to take any medication prior to that. In addition, the record shows that in January 2016[, Plaintiff] declined to take the recommended trazodone, stating he was interested in a more "natural" remedy such as marijuana. [Plaintiff]'s therapist advised him against using marijuana. He repeatedly refused any psychotropic medication. There is no objective evidence that [Plaintiff] has been prescribed any medication since 2016.

*Id.* at 64–66 (internal record citations omitted). With regard to treatment for his mental health, the ALJ noted:

> In October 2015, [Plaintiff's] sleep disorder was attributed to lack of routine obligation in the morning, and a day program was recommended. Although he testified to worsening depression since that time, the record shows that in mid-November 2015, he decided to scale back his psychotherapy appointments to once every two weeks because he felt stable. He admitted that psychotherapy was helpful. However, he ended psychotherapy in April 2016 when his therapist left. Although [Plaintiff] testified that his sleep continues to be poor, the record shows that in August 2016 he stated that since he started using the recommended CPAP machine, he wakes up less, was dreaming more, he was sleeping for 8-9 hours, he felt better, his memory is better, and his overall improvement was 8/10 with CPAP therapy. However, the record shows that [Plaintiff] did not seek any treatment for his fatigue and daytime sleepiness until late March 2016. In addition, although [Plaintiff] testified that he sees all his treating providers regularly, there is no objective evidence that [Plaintiff] has sought any treatment since 2016. If [Plaintiff] were compliant with the recommended treatment, his symptoms could be expected to improve.

*Id.* at 66 (internal record citations omitted).

Like the ALJ's physical RFC findings, the mental RFC findings are supported by substantial evidence. The ALJ extensively reviewed the mental health evidence of record, including Plaintiff's testimony, Plaintiff's mental health history and treatment notes, and the medical opinion evidence proffered by the consultative mental health examiners to support her

17

conclusion as to Plaintiff's mental limitations. Plaintiff's allegation that the findings lack medical support because Dr. Cascella's opinion is not a medical opinion is incorrect. Administrative Message 13066, cited by the ALJ, states that for claims filed before March 27, 2017, a Global Assessment of Functioning ("GAF") rating is considered a medical opinion "if it was made by an acceptable medical source." ECF No. 21-2 at 4. Dr. Cascella, the consultative examining state psychiatric expert, assessed Plaintiff's GAF rating as a 55. ECF No. 10 at 373. Because Dr. Cascella is an acceptable medical source and Plaintiff's claim was filed on April 7, 2014, well before March 27, 2017, the ALJ did not err in assigning Dr. Cascella's opinion great weight and considering it when assessing Plaintiff's mental RFC. Additionally, Plaintiff's allegation that the ALJ could not properly adjudicate his mental RFC due to the revised regulations is unfounded. Plaintiff fails to highlight, and the Court is unable to find, any specific error the ALJ made in applying the revised regulations. As discussed, the ALJ applied each of the medical criteria provided in the revised regulations and thoroughly discussed the rationale for her findings. Accordingly, the Court finds that the ALJ's mental RFC was supported by substantial evidence.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act from April 7, 2014 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary

Judgment (ECF No. 21) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 25 February 2019

A. David Copperthite
United States Magistrate Judge